IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL OLSSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 03057 |
| | ) | |
| LISA MADIGAN, *et al.* | ) | |
| | ) | Judge John J. Tharp, Jr. |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paul Olsson, a detainee at the Elgin Mental Health Center ("EMHC"), filed this action against Defendants Illinois Attorney General Lisa Madigan, Assistant Attorney General Michael D. Arnold, McHenry County Circuit Court Judge Michael Chmiel, and Chief Deputy Lake County State's Attorney Daniel Jasica alleging, *inter alia,* violations of his constitutional rights in connection with a Lake County Chancery lawsuit, which invalidated an August 17, 2011 "Lis Pendens and Notice of Federal Lien" that Olsson recorded with the Lake County Recorder of Deeds. Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), the defendants move to dismiss Olsson's complaint in its entirety. For the reasons set forth below, the defendants' motions are granted, and Olsson's claims are dismissed.

## I. Background

Plaintiff Olsson was prosecuted for criminal sexual assault in Lake County, Illinois. *See Olsson v. O'Malley,* 352 Fed. Appx. 92 (7th Cir. 2009). During those proceedings, Lake County Circuit Judge Fred Foreman declared Olsson incompetent to stand trial. Compl. at ¶ 14. Olsson was then involuntarily committed to the Illinois Department of Human Services ("IDHS") and now resides at the EMHC. While his criminal case was still pending, Olsson attempted to

challenge the state criminal proceedings in federal court. *See Olsson v. O'Malley, et al.,* No. 08 C

06317, Dkt. 1 (N.D. Ill. Nov. 4, 2008). In that action, Olsson alleged violations of the Racketeer

Influenced and Corrupt Organizations ("RICO") Act by seventeen individuals, including state

judges, prosecutors, and public defenders—essentially, anyone who had a role in the state

criminal proceedings. *Id.* On January 7, 2009, Judge Kendall dismissed Olsson's complaint for

failure to state a claim and on *Younger v. Harris* and *Heck v. Humphrey* grounds, with leave to

reinstate his claims when they were no longer barred. 401 U.S. 37 (1971); 512 U.S. 477 (1994);

*see also Olsson v. O'Malley,* No. 08 C 06317, Dkt. 39 (N.D. Ill. Jan. 7, 2009). Olsson appealed,

and on November 9, 2009, the Seventh Circuit affirmed the dismissal of Olsson's RICO lawsuit.

*See Olsson v. O'Malley,* 352 Fed. Appx. at 95.

On July 7, 2011, Olsson filed a motion of intent to reinstate his RICO lawsuit. *See Olsson*

*v. O'Malley,* No. 08 C 06317, Dkt. 62 (N.D. Ill. Jul. 7, 2011). Attached to that motion, Olsson

included a document titled "Federal Lien." Olsson described this "Federal Lien" as a lien at

common law and a federal lien pursuant to Title 28 of the United States Code, Section 1962. *See*

*Compl.,* Ex. A ("Federal Lien"). The "lien" purported to encumber all real and personal property

of the defendants in Olsson's lawsuit for the amount of "Ten Billion United States Dollars

($10,000,000,000 USD)." *Id.* Judge Kendall again denied Olsson's motion on *Younger* and *Heck*

grounds because his criminal proceedings were still ongoing. *Olsson v. O'Malley,* No. 08 C

06317, Dkt. 63 (N.D. Ill. Jul. 18, 2011).

Despite the fact that he did not obtain a judgment in the RICO lawsuit, on August 17,

2011, Olsson recorded a "Lis Pendens and Notice of Federal Lien" with the Lake County

Recorder of Deeds. *See* Compl., Ex. B at 3-4 ("Lis Pendens and Notice of Federal Lien,"

attached as Ex. D). The recorded "lien" referenced all of the defendants in the federal lawsuit and

2

the property at 18 N. County Street, Waukegan, Illinois—the Lake County Administrative Building. *See id.* at 4.

On October 25, 2011, defendant Assistant Attorney General Arnold filed a complaint for declaratory and injunctive relief in the Nineteenth Judicial Circuit of Lake County ("Chancery Lawsuit"), naming Olsson and Mary Ellen Vanderventer, in her official capacity as the Lake County Recorder, as defendants. The complaint sought a judgment to have the "lien" declared improperly recorded and a permanent injunction barring Olsson from filing "any lien, lis pendens, or any other document concerning Plaintiffs, the Judicial Officers, or their agents, representatives, or employees, in any government office without prior Court approval." *Id* at 7. Defendant Jasica filed an answer to the Attorney General's complaint on behalf of Ms. Vanderventer. *See* Compl. at ¶ 18; Def. Mot. at 2. This appears to be the extent of Defendant Jasica's involvement in the Chancery court proceedings.

Olsson was served with notice of the complaint on December 19, 2011, and therefore was required to appear and answer by January 19, 2012. *See* Compl. at 6; *see also Gelb v. Air Con Refrigeration and Heating, Inc.,* 326 Ill. App. 809, 821, 761 N.E.2d 265, 275 (1st Dist. 2001) ("defendant has 30 days thereafter to plead and appear under [Illinois Supreme Court] Rule 181(a)). Olsson having neither appeared nor answered within 30 days, Defendant Arnold filed a motion for default judgment on February 9, 2012. *See* Compl., Ex. B. Judge Chmiel granted the motion for default judgment on April 19, 2012. *See id,* Ex. C. The order declared Olsson's lien "void and of no legal effect," and enjoined Olsson from recording or filing any other liens without Court approval. *Id.* Olsson had another 30 days from the date of the default order to file a motion to have that default set aside. *See* 735 ILCS 5/2-1301(e). Olsson did not file a motion,

3

and since the default order was entered on April 19, 2012, that 30-day period lapsed on May 19, 2012.

During the period in which Olsson could have challenged the default order, he instead filed the instant action on April 25, 2012. The complaint alleges abuse of process (Count 1), due process violations (Count 2), conspiracy to violate the plaintiff's rights (Count 3), a *Monell* claim (Count 5), and a "Bill *Quia Timet*" claim (Count 6), in addition to seeking declaratory and injunctive relief (Count 4). *See* Compl. at 9-20. Defendants Madigan, Chmiel, and Arnold filed a motion to dismiss Olsson's complaint, in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), absolute and qualified immunity, and the Eleventh Amendment. Defendant Jasica filed a motion to dismiss the claims against him pursuant to Rules 12(b)(1) and (6).

## II.    Analysis

### A.    Abuse of Process (Count 1), Due Process Violations (Count 2), Conspiracy (Count 3), Declaratory and Injunctive Relief (Count 4), and *Monell* Claim (Count 5)

Olsson alleges that the defendants "deliberately committed abuse of legal process" by "mount[ing] a frivolous and untimely Chancery Suit" against him. Compl. at ¶¶ 38, 37. Moreover, according to Olsson, by prosecuting—or, in the case of Defendant Jasica, even participating—in the Chancery Lawsuit, the defendants violated their "duty to judicially interfere and diligently protect the rights and the best interests of those adjudicated mentally incompetent, like [Olsson], from anything that would cause them harm." *Id.* at ¶ 27. The harm, in this case, is the invalidation of the "lien" Olsson recorded at the Lake County Recorder of Deeds. *Id.* at ¶ 28. As such, the defendants, again according to Olsson, violated, and conspired to violate, his due process rights. *Id.* at ¶¶ 39-46.

Olsson also purports to assert a *Monell* claim against Lake County (despite the fact that Lake County is not named as one of the defendants in the case caption). According to Olsson's allegations, Lake County has failed "to provide an effective system to adequately govern for the prevention of misconduct." *Id.* at ¶ 50. In addition to compensatory and punitive damages on all counts, Olsson requests declaratory and injunctive relief. Specifically, he seeks a judgment declaring the Chancery Lawsuit void and that his "lien" is entitled to "unimpaired recordation in Lake County…[and] notice to the public at large." *Id.* at ¶ 48.

Before proceeding to the merits of Olsson's claims, this Court must determine whether it has subject-matter jurisdiction. *See State of Illinois v. City of Chicago,* 137 F.3d 474, 478 (7th Cir. 1998) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further."). The defendants contend that Olsson's complaint should be dismissed for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and the *Rooker-Feldman* doctrine because, at bottom, Olsson is challenging a state-court judgment. On a motion to dismiss under Rule 12(b)(1), the Court accepts "as true all facts alleged in the well-pleaded complaint and draws all reasonable inferences in favor of the plaintiff." *Scanlan v. Eisenberg,* 669 F.3d 838, 841 (7th Cir. 2012). The Court may, however, "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Long v. Shorebank Development Corp.,* 182 F.3d 548, 554 (7th Cir. 1999) (citing *Capitol Leasing Co. v. Federal Deposit Ins. Co.,* 999 F.2d 188, 191 (7th Cir. 1993)).

"While…§ 1983 creates a civil cause of action against public officials for violating a person's constitutional rights, that cause of action is constrained by the jurisdictional principles of *Rooker-Feldman.*" *Young v. Murphy,* 90 F.3d 1225, 1230 (7th Cir. 1996). Under *Rooker-*

*Feldman*, named for the two Supreme Court decisions that have defined the doctrine, "lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments." *Id.* at 548 (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482-86 (1983)). *Rooker-Feldman* is a "narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Kelley v. Med-1 Solutions, LLC,* 548 F.3d 600, 603 (7th Cir. 2008) (internal quotations omitted) (citing *Lance v. Dennis,* 546 U.S. 459, 464 (2006); *Exxon Mobil v. Saudi Basic Industries,* 544 U.S. 280, 284 (2005)). "Claims that directly seek to set aside a state court judgment are de facto appeals and are barred without additional inquiry." *Taylor v. Federal National Mortgage Association,* 374 F.3d 529, 532 (7th Cir. 2004). In addition, the "doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations." *Long,* 182 F.3d at 554 (citing *Feldman,* 460 U.S. at 482 n. 16).

That said, the "doctrine does not prevent state-court losers from presenting independent claims to a federal district court, even if the new claims involve questions related to those in the original state court proceedings." *Id.* (citing *Skinner v. Switzer,* -- U.S. --, --, 131 S. Ct. 1289, 1297 (2011)); *see also Kelley,* 548 F.3d at 603 ("The doctrine will not prevent a losing litigant from presenting an independent claim to a district court," citing *Exxon Mobil,* 544 U.S. at 293). But where "the plaintiff complains of an injury that cannot be separated from the state court judgment…[that plaintiff] must appeal through the state court system and then seek review in the United States Supreme Court by filing a writ of certiorari." *Kelley,* 548 F.3d at 607.

The critical inquiry in applying the *Rooker-Feldman* doctrine, therefore, "is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *L.V. Crawford v. Countrywide Home Loans, Inc.,* 647 F.3d 642, 646 (7th Cir. 2011) (citing *Taylor,* 374 F.3d at 532). The Court must ask "whether the injuries of which [Olsson] complains are independent of the Circuit Court['s]" order. *Long,* 182 F.3d at 555. But the "crucial point is whether 'the district court is in essence being called up to review the state-court decision.'" *Taylor,* 374 F.3d at 533 (citing *Ritter v. Ross,* 992 F.2d 750, 754 (7th Cir. 1993), quoting *Feldman,* 460 U.S. at 483-84 n. 16). That "determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Id.* (citing *Long,* 182 F.3d at 555).

Olsson's claims and requests for declaratory and injunctive relief closely resemble those alleged in cases in which the Seventh Circuit found that the *Rooker-Feldman* doctrine applied. For instance, in *Young,* Samuel Young brought an action in federal court alleging that government officials had violated John Wellman's (Young's client) right to due process "when the circuit court conducted Wellman's competency proceeding without providing notice to either Wellman or Young." 90 F.3d at 1231. Young also alleged that the burden of proof in the competency proceeding violated Wellman's right to due process. *Id.* The Seventh Circuit noted, however, that Young was not challenging the constitutionality of Illinois's probate laws generally, but rather, was "specifically seek[ing] to have the district court review the specifics of Wellman's state incompetency proceeding, declare it error, and provide damages to Wellman's estate for the error." *Id.* As such, the court concluded that "Wellman's injury resulted from the state court judgment of incompetency and not from the alleged denial of due process." *Id.* In

other words, had Wellman prevailed at his competency hearing, despite the alleged due process errors, "he would have had no injury and no constitutional claim to bring before the district court." *Id.*

Here, Olsson's alleged injury stems not from an alleged denial of due process, but from the state-court order declaring his "lien" invalid. *See Young,* 90 F.3d at 1231. And like the plaintiff in *Young,* Olsson is requesting that this Court review state court proceedings, declare those proceedings void, and award him damages and relief on that basis. *See id.* This is so because without the default judgment against him, Olsson would not have suffered the alleged injuries for which he seeks declaratory and injunctive relief. In fact, had Olsson responded to the defendants' declaratory action or motion for default (or even responded to the state-court order within 30 days rather than filing the instant complaint) and prevailed, "he would have no injury and no constitutional claim to bring before the district court." *Young,* 90 F.3d at 1231; *see also Nesses v. Shepard,* 68 F.3d 1003, 1005 (7th Cir. 1995) ("[W]ithout harm there is no tort…a principle as applicable to constitutional torts as to common law torts," (citations omitted)). This point is underscored by the fact that Olsson's primary request for relief is a judgment declaring that the "Chancery Suit proceeding against Plaintiff…is void." Compl. at ¶ 48.

Olsson contends that "[w]here a federal civil rights complaint portrays the defendant(s) as having succeeded in corrupting the state judicial process as to obtain a favorable judgment, then the Rooker-Feldman doctrine does not bar the federal suit." Pl. Resp., Dkt. 34 at 13-14 (citing *Loubser v. Thacker,* 440 F.3d 439, 441 (7th Cir. 2006)). While this is, generally, a correct restatement of the law, *see, e.g. Loubser,* 440 F.3d at 441; *Nesses,* 68 F.3d at 1005, it is not an accurate restatement of Olsson's complaint. The basis of Olsson's complaint is not that the state-court proceeding was corrupted by the defendants, but that he should have not been subject to the

suit or motion for default judgment at all. *See* Compl. at ¶ 29. In other words, this is not a claim that the defendants violated "some independent right of his," *see Nesses,* 68 F.3d at 1005; rather, it is a challenge to the state-court proceeding and default order in federal court—exactly what the *Rooker-Feldman* doctrine bars. And as the Seventh Circuit has consistently explained, a plaintiff cannot circumvent the effect of *Rooker-Feldman* and "seek reversal of a state court judgment simply by recasting the complaint in the form a civil rights action." *Long,* 182 F.3d at 557 (citing *Ritter,* 992 F.2d at 754).

To be sure, Olsson also argues that he was "obstructed from meaningfully participating in the state court chancery proceeding," Pl. Resp., Dkt. 34 at 14, which would be the result of a corrupted process. A corrupt process is not far removed from no process, *see Loubser,* 440 F.3d at 441-42, and application of the *Rooker-Feldman* doctrine requires that a litigant have had a "reasonable opportunity" to present his claims in the state-court proceeding. *Long,* 182 F.3d at 558. As the Seventh Circuit has explained, however, the "reasonable opportunity" exception "is of questionable viability," given the Supreme Court's "dramatic[] narrowing [of] the *Rooker-Feldman* doctrine in *Exxon Mobil.*" *Kelley,* 548 F.3d at 607.

In *Exxon Mobil,* the Supreme Court expressly "confined [the *Rooker-Feldman* doctrine to]…cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 284. The Court explained that "[i]f a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party…, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293 (internal quotations

omitted) (citing *GASH Associates v. Rosemont,* 995 F.2d 726, 728 (7th Cir. 1993); *accord Noel v. Hall,* 341 F.3d 1148, 1163-64 (9th Cir. 2003)).

Given the *Exxon Mobil* holding*,* the Seventh Circuit has explained that "it is difficult to envision a scenario in which a litigant who is otherwise barred by *Rooker-Feldman* from establishing subject matter jurisdiction in federal court could proceed with his or her lawsuit because he or she lacked an opportunity to present claims in state court." *Kelley,* 548 F.3d at 607 (noting that the Tenth Circuit rejected the "reasonable opportunity" exception prior to *Exxon Mobil* and that the Sixth Circuit eliminated the exception as a result of *Exxon Mobil*). This is so because, by narrowing the *Rooker-Feldman* doctrine, "the Supreme Court ensured that litigants will always have subject matter jurisdiction to bring claims that are independent of the state court judgment in federal court," *id.,* and therefore, "there is no need for a 'reasonable opportunity' exception in those types of cases." *Id.* "On the other hand, the Supreme Court definitely concluded…that lower federal courts do not have subject matter jurisdiction in cases in which the plaintiff complains of an injury that cannot be separated from the state court judgment," *id.*, in which case, "regardless of the opportunity…[the plaintiff] had to raise a claim in state court, the litigate must appeal through the state court system and then seek review in the…Supreme Court." *Id.*

All that said, whether or not the "reasonable opportunity" exception remains viable, Olsson had ample opportunity to participate and asserts his claims in state court. According to the facts as alleged in Olsson's complaint, he was served with a summons and a copy of the Chancery Lawsuit on December 19, 2011. *See* Compl. at ¶ 18. Olsson did not answer that complaint. Further, while Olsson alleges that he was never served with a copy of the defendants' motion for default, *see id.* at ¶ 20, he was aware of the order issued by the Circuit Court on April

10

19, 2012. *See id.* at ¶ 21. At that point, Olsson had 30 days to appeal the default order, *see* 735 ILCS 5/2-1301(e), but chose to file the instant suit on April 25, 2012. This is more than enough to show that Olsson had a reasonable opportunity to participate in the state court proceedings, but instead, chose to file this federal suit. *See, e.g., Gilbert v. Illinois State Board of Education,* 591 F.3d 896, 902 (7th Cir. 2010) ("[The plaintiff] passed up his opportunity to appeal as a matter of right to the Illinois Supreme Court…[which] is enough to demonstrate that [he] did have a 'reasonable opportunity' to pursue his due process claim in Illinois state court."). *Rooker-Feldman* bars that course of action.

At bottom, Olsson's claims are "inextricably intertwined" with the Lake County Circuit Court's order invalidating his "lien." Olsson's abuse of process claim alleges that the defendants "mount[ed] a frivolous and untimely Chancery suit against Plaintiff." Compl. at ¶ 37. There is no independent federal abuse of process claim under § 1983, *see Adams v. Rotkvich,* 325 Fed. Appx. 450, 453 (7th Cir. 2009) ("[A]buse of process is not a free-standing constitutional tort if state law provides a remedy for abuse of process[, and] Illinois provides such a remedy," (citations omitted)), and even if there were, that claim would still be inextricably intertwined with the injury allegedly caused by the state-court order. This analysis applies equally to Olsson's due process and conspiracy claims, both of which are also founded upon the defendants' allegedly unlawful prosecution of the suit resulting in the order invalidating his purported lien. It also applies to the *Monell* claim, in which Olsson alleges that Lake County, which was not named as a defendant, has been deliberately indifferent and willfully blind "to the risks of constitutional and statutory injury [to] citizen litigants…[by] failing to provide an effective system to adequately govern for the prevention of official misconduct." *Id.* at ¶ 50. The alleged "official misconduct" consists of the state-court proceedings and default order. Therefore, to prevail on

these claims, Olsson is inevitably forced to challenge the validity of the state-court order—the source of his injury—contrary to the *Rooker-Feldman* doctrine. *See, e.g., Long,* 182 F.3d at 557.

This Court does not have subject-matter jurisdiction "over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Young,* 90 F.3d at 1230 (citing *Feldman,* 460 U.S. at 486); *see also Long,* 182 F.3d at 548 ("[A] decision by a state court, however erroneous, is not itself a violation of the Constitution actionable in federal court," citing *Homola v. McNamara,* 59 F.3d 647, 650 (7th Cir. 1995)). Rather, "litigants who feel a state proceeding has violated their constitutional rights must appeal that decision through their state courts and thence to the Supreme Court." *Id.* Accordingly, the Court lacks subject-matter jurisdiction over Olsson's claims. Therefore, Olsson's abuse of process, due process, conspiracy, declaratory and injunctive relief, and *Monell* claims are dismissed.

## B. Bill *Quia Timet* (Count 6), Request for Referral to the Chief Judge, Motion to Strike, Motion to Disqualify, and Motion for Recusal

In his sixth count, Olsson asserts a claim labeled "In the Nature of "Bill *Quia Timet.*'" Compl. at ¶¶ 60-68. Specifically, Olsson alleges that the defendants, other Lake County officials, and the U.S. Attorney's Office have engaged, or are complicit, in "criminal misconduct." *Id.* at ¶ 62. He also "fears that…[the defendants]…in combination with other state actors known and unknown…will retaliate against" him for bringing his "instant Verified Complaint." *Id.* ¶ 66. An example of the retaliation Olsson fears includes "subject[ion] to yet another 'sham' fitness proceeding in the Circuit Court of Lake County and before a judge willing to overlook…the fundamental and statutory violations and irreparable injury suffered by Plaintiff as generally set forth [in the complaint.]" *Id.* Olsson requests that: (1) this "matter be referred to the Chief Judge to supervise a grand jury investigation of official criminal misconduct…involving Lake County

12

state actors and the U.S. Attorney's Office"; and (2) the appointment of a special prosecutor "to investigate [the] complained of criminal misconduct." *Id.* at ¶ 68. In his response, Olsson also "renews his request for transference [of this matter] to the Chief Judge." Pl. Resp., Dkt. 34 at 15.

"*Quia Timet* is the right of a surety to demand that the principal place the surety 'in funds' when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor." *Borey v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania,* 934 F.2d 30, 32 (2d Cir. 1991) (citing *New Orleans v. Gaines's Adm'r.,* 131 U.S. 191 (1889)). "Historically, a bill *quia timet* was the procedural device by which a court of equity would exercise its jurisdiction 'to protect a party against the occurrence of some future injury which he fears he may suffer, and which he cannot avoid by a present action at law.'" *Id.* (citing Mann & Jennings, *Quia Timet: A Remedy for the Fearful Surety,* 20 Forum 685, 686 (1985); 4 Pomeroy's Equity Jurisprudence §§ 1393-94, at 1021-22 (5th ed. 1941)). All of that said, whether Olsson labels his count as a motion for declaratory relief, injunctive relief, or a bill *quia timet*, it is clear that he is, again, challenging state-court proceedings and orders. Specifically, Olsson alleges that the defendants and other official have engaged in "criminal misconduct," which as stated above, consists of the administration of the state-court proceedings that he challenges in the instant complaint. To the extent that Olsson's sixth count seeks a review and invalidation of those state-court proceedings, the "bill *quia timet*" is no different than his request for an order declaring the state-court default judgment "void." As stated above, these claims require Olsson to challenge the validity of the state-court order, and this Court does not have subject-matter jurisdiction to address the merits of those claims pursuant to the *Rooker-Feldman* doctrine.

To the extent that Olsson requests equitable relief from some form of future retaliation by the defendants, he has failed to state a claim pursuant to Rule 12(b)(6). In order to survive a motion to dismiss, a claim must not only contain "a short and plain statement…showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), but must also "provide enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and "raise a right to relief above the speculative level." *Id.* at 555. Aside from allegations of possible "sham" fitness proceedings, Olsson fails to provide factual context to his vague allegations of future "official misconduct" and potential retaliation that are plausible. As such, his sixth count fails to state a claim.

Furthermore, even if Olsson had stated a viable claim for relief, this Court does not have the authority to grant the relief he requests. The decision to appoint a special prosecutor to investigate criminal misconduct is an executive decision, *see In re United States,* 345 F.3d 450, 453 (7th Cir. 2003) ("The Constitution's "take Care" clause (art. II, § 3) places the power to prosecute in the executive branch."), and the "Judicial Branch does not instruct the Executive Branch how to make executive decisions." *Orum v. C.I.R.,* 412 F.3d 819, 821 (7th Cir. 2005) (citing *Norton v. Southern Utah Wilderness Alliance,* 542 U.S. 55 (2004)). Simply put, "the authorized powers of federal judges do not include the power to prosecute crimes." *In re United States,* 345 F.3d at 452 (citing *Wayte v. United States,* 470 U.S. 598, 607 (1985)); *id.* at 453 (holding that, by appointing a private attorney to prosecute a civil rights action, "[t]he judge…[was] playing U.S. Attorney.").

Similarly, Olsson's motions to strike and disqualify (set forth only in his response to the defendants' motions to dismiss, and therefore subject to denial on that basis alone), are premised on the same challenges to the same state-court proceedings as his other claims, and for the

14

reasons provided above, are denied. *See* Pl. Resp. at 6-10. Insofar as Olsson requests this matter

be transferred to the Chief Judge, the Court has already considered and denied that motion. *See*

Dkt. 27 at 3. To the extent Olsson's request can be construed as a motion for reconsideration,

that motion is denied. Furthermore, to the extent that Olsson seeks recusal of this Court, that

motion has been considered and denied, s*ee id.* at 2, and reconsideration of that motion is also

denied.

\*       \*       \*

For the reasons set forth above, the defendants' motions to dismiss are granted, and the

plaintiff's complaint is dismissed in its entirety.

Entered: January 2, 2013

_____

John J. Tharp, Jr.
United States District Judge