Case: 1:12-cv-03057 Document #: 42 Filed: 04/23/13 Page 1 of 4 PageID #:390

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John J. Tharp Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 03057 | **DATE** | 04/23/2013 |
| **CASE TITLE** | Olsson vs. Madigan, *et al.* | | |

**DOCKET ENTRY TEXT**

The plaintiff's motion for reconsideration [40] is denied, and motion for determination of status [41] is denied as moot.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

### I. Background

Plaintiff Paul Olsson filed this action against defendants Illinois Attorney General Lisa Madigan, Assistant Attorney General Michael D. Arnold, McHenry County Circuit Judge Michael Chmiel, and Chief Deputy Lake County State's Attorney Daniel Jasica alleging violations of his constitutional rights in connection with a Lake County Chancery Court default order, which invalidated a "Lis Pendens and Notice of Federal Lien" that Olsson recorded with the Lake County Recorder of Deeds on August 17, 2011. On January 2, 2013, this Court dismissed Olsson's complaint without prejudice, for lack of subject matter jurisdiction, and his case was terminated. *See* Mem. Op. and Order, Dkt. 39 ("January 2 Order"). As the Court explained, because Olsson's complaint challenges the state-court proceedings and default order which invalidated his "lien," it is barred by the *Rooker-Feldman* doctrine.

On January 29, 2013, Olsson filed a motion for reconsideration of the January 2 Order, which is now pending before the Court. *See* Mot. for Recons., Dkt. 40. In his motion, Olsson contends that the Court erred in its finding that the *Rooker-Feldman* doctrine bars his claim and by its refusal to transfer his case to the Chief Judge. Further, he requests clarification that this Court "is sitting as an Article III Court." For the reasons set forth below, the plaintiff's motion for reconsideration is denied in its entirety.

### II. Analysis

Motions for reconsideration serve a limited purpose. "Rule 59 is not a vehicle for rearguing previously rejected motions." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000); *see also Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) ("A motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind."). To prevail on a motion for reconsideration, a movant must show manifest errors of law or fact or present newly discovered evidence. *See id.* (citing

12C03057 Olsson vs. Madigan, *et al.*                                                                Page 1 of 4

*LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)). But a "'manifest error' is not demonstrated by the disappointment of the losing party." *Id.* Rather, it is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* at 606 (quoting *Sedrak v. Callahan,* 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). As such, motions for reconsideration are rarely granted. "Once judgment has been entered, there is a presumption that the case is finished, and the burden is on the party who wants to upset that judgment to show the court that there is good reason to set it aside." *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). Olsson's motion falls well short of this high bar.

As the Court explained in its January 2 Order, under the *Rooker-Feldman* doctrine this Court lacks subject matter jurisdiction over claims seeking review of and challenging state-court judgments. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman,* 544 U.S. 280, 284 (2005); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005) (holding that *Rooker-Feldman* is a narrow doctrine, "confined to cases…brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). "The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with the state court determinations." *Kelley v. Med-1 Solutions, LLC,* 548 F.3d 600, 603 (7th Cir. 2008) (citing *Feldman,* 460 U.S. at 482 n.16). That said, plaintiffs may proceed in federal court on independent claims that are distinct from the implicated state-court determination, *id.* (citing *Exxon Mobil,* 544 U.S. at 293), or on claims that the plaintiffs did not have a "reasonable opportunity" to present in state court. *Id.* at 605. But "[i]f the plaintiff could have raised an issue in state court, the claim is barred under *Rooker-Feldman.*" *Brown v. Bowman,* 668 F.3d 437, 442 (7th Cir. 2012).

The thrust of Olsson's argument is that the Court misapplied the *Rooker-Feldman* doctrine to his complaint, because he did not have a reasonable opportunity to present his claims in state court and that his claim is independent from the implicated state-court default order. First, Olsson contends that his complaint falls within the "reasonable opportunity" exception to the *Rooker-Feldman* doctrine, which provides federal district courts with subject matter jurisdiction over federal claims that a plaintiff could not have presented in state court due to either Illinois law or some other state-court act or procedure. *See Kelley,* 548 F.3d at 605; *see also Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 558 (7th Cir. 1999) ("Typically, either some action taken by the state court or state court procedures in place have formed the barriers that the litigants are incapable of overcoming in order to present certain claims to the state court."). Olsson claims that, because he was found unfit to stand trial by the Lake County Circuit Court, he is an "incompetent person," and was thereby precluded from participating in the state-court civil proceedings that invalidated his "lien." According to Olsson, the Circuit Court found him "unfit and incompetent to proceed in litigation without representation." Mot. for Recons., Dkt. 40 at 2.

Olsson overstates the effect of this fitness determination. Under Illinois law, "[f]itness speaks only to a person's ability to function within the context of trial; it does not refer to sanity or competence in other areas." *People v. Coleman*, 168 Ill.2d 509, 524, 660 N.E.2d 919, 928 (Ill. 1995) (quoting *People v. Fowler,* 222 Ill. App. 3d 157, 164, 583 N.E.2d 686, 692 (2d Dist. 1991)). The Circuit Court's determination that Olsson was unfit to stand trial did not prevent him from appearing in the state-court civil proceedings as he contends. Even "[a]n insane person

has a legal capacity to sue or be sued, the same as a sane person, provided he has not been divested of the power of the appointment and qualification of a conservator or guardian." *Kirkland v. Kirkland,* 38 Ill. App. 2d 280, 287, 186 N.E.2d 794, 796 (1st Dist. 1962) (explaining that the appointment of a guardian *ad litem* is procedural, not jurisdictional, and, therefore, that the failure to appoint a guardian does not deprive the court of jurisdiction to enter a decree on a proper showing); *see also O'Toole v. Vill. of Downers Grove Police Dep't,* No. 85 C 07380, 1986 WL 8732 (N.D. Ill. Aug. 1, 1986). And whether a guardian *ad litem* or attorney should have been appointed by the state court is a claim that seeks review of the state-court proceedings—effectively an appeal—that belongs in the *state court system. See id.* 38 Ill. App. 2d at 287, 186 N.E.2d at 797 (explaining that the state court's failure to appoint a guardian *ad litem* to an insane person, who was served but failed to appear or answer petition for annulment, might have been grounds for reversal in the appellate court, had the plaintiff's application been timely filed); *see also Kelley*, 548 F.3d at 603 ("A state court litigant seeking review of a state court judgment must follow the appellate process through the state court system and then directly to the United States Supreme Court," citing *GASH Assocs. v. Vill. of Rosemont, Ill.,* 995 F.2d 726, 727 (7th Cir. 1993)).

Further, the decision to involuntarily commit Olsson to the Elgin Mental Health Center ("EMHC"), based on a diagnosis of pedophilia and determination that he is a "serious threat to public safety," *see People v. Olsson,* Nos. 2-11-0173, 2-11-0174, 2012 WL 6967262, at *1 (2d Dist. June 27, 2012) (citing 725 ILCS 5/104-25(g)(2)), did not strip him of his ability to answer the defendants' complaint in state court, respond to their motion for default, or appeal the Chancery Court's default order. The decision to involuntarily commit an individual says nothing about their competence or ability to appear in a civil proceeding. In fact, the Illinois Supreme Court has noted that the presumption of competency to direct one's legal affairs extends to those adjudicated mentally ill. *See In re Phyllis P.*, 182 Ill.2d 400, 402, 695 N.E.2d 851, 852 (Ill. 1998). Specifically, there is a "distinction between mental illness and the specific decisional capacity to exercise or waive legal rights." *Id.* Accordingly, Olsson has failed to demonstrate that the state-court determination that he was unfit to stand trial or his commitment to the EMHC created an insurmountable barrier to presenting his claims in state court. *See Long,* 182 F.3d at 560 (the plaintiff must point to "some action taken by the state court or state court procedures…[which have] formed the barriers that [the plaintiff was] incapable of overcoming in order to present [his] claims to the state court"); *see also id.* at 558 ("It is not enough for [the plaintiff] to say that because she was kept away from the Circuit Court…proceeding[s] by the defendants' chicanery, she was denied a reasonable opportunity to raise her claims before the Circuit Court.").

Olsson's claim that he did not have a reasonable opportunity to present his claim in state court is also belied by his own conduct. According to the exhibits attached to his motion, on December 19, 2012—the day he was served with notice of the defendants' complaint in Chancery Court—Olsson proclaimed, "I will not be attending any court hearings allegedly pertinent to me." Mot. for Recons., Dkt. 40, Ex. 1. He further stated, "Please instruct EMHC personnel and staff. . . not to bother me with inquiries concerning my going to court. I will let you know if and when I change my mind." *Id.* And most tellingly, instead of answering the complaint, responding to the defendants' motion for default, or appealing the state court's default order, Olsson filed this (now terminated) action in federal court (in addition to numerous motions and briefs), while the window to appeal the state court's order was still open. Specifically, Olsson had until May 19, 2012 to file a motion to have the default order set aside,

but instead chose to file his complaint in this Court on April 25, 2012. "[O]ne who turns his back on the original tribunal does not help himself to the opportunity to litigate elsewhere." *Homola v. McNamara*, 59 F.3d 647, 651 (7th Cir. 1995). Olsson was not prevented from presenting his claim in state court—he simply refused to do so, instead opting to file an action in this Court. Having made that decision, Olsson cannot now claim that he lacked a reasonable opportunity to raise his claim in state court. As this Court previously explained in its January 2 Order, *Rooker-Feldman* bars the plaintiff's attempted course of action.

Olsson further contends that *Rooker-Feldman* does not apply because his claim is independent from the state-court judgment. Olsson argues that the defendants "perpetrated a fraud" by conducting the state-court proceedings with full knowledge that Olsson was "legally incompetent," unrepresented, and barred from participating. Mot. to Recons., Dkt. 40 at 6. But no matter how carefully Olsson crafts his argument to avoid *Rooker-Feldman*, his claim, at bottom, still challenges the propriety and outcome of the state-court proceedings—precisely the type of action barred by *Rooker-Feldman*. Inferior federal courts are "barred from evaluating claims. . .where all of the allegedly improper relief was granted by state courts." *Kelley*, 548 F.3d at 605. While Olsson contends that the defendants' actions during the course of the state-court proceedings constituted "due process violations…independent of and complete prior to the entry of the state court judgment," they are actions that allegedly caused the result that he complains of, namely the entry of the default order invalidating his "lien." Olsson therefore would not have suffered his alleged injury in the absence of the court order and *Rooker-Feldman* therefore applies. *See, e.g., Kelley,* 548 F.3d at 605 (plaintiff's claim that defendants fraudulently obtained attorney fees barred under *Rooker-Feldman* because in order to "capitalize on the alleged fraud," the defendants "needed to prevail in state court," which would "ultimately require [the federal court] to evaluate the state court judgments").

As a final matter, Olsson moves for reconsideration of his requests for equitable relief and to transfer his case to the Chief Judge. Olsson also requests "Clarification that the Court is Sitting as an Article III Court." Mot for Recons., Dkt. 40 at 10. As explained above, the Court lacks subject matter jurisdiction over the plaintiff's claims, and therefore, his requests must be denied. *See, e.g., State of Ill. v. City of Chi.,* 137 F.3d 474, 478 (7th Cir. 1998) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further."). Furthermore, to the extent that the Court has already addressed the plaintiff's arguments throughout the course of this case, he has neither demonstrated a manifest error of law or fact regarding those determinations, nor has he presented newly discovered evidence for this Court to consider. And lastly, to the extent that the plaintiff seeks clarification and asserts that this court does not "sit as an Article III court," that claim is outside the scope of a Rule 59(e) motion for reconsideration, which does not permit the movant to present new arguments. *See Evans v. Ashburn,* 67 Fed. Appx. 938, 939 (7th Cir. 2003). Accordingly, the plaintiff's motion for reconsideration and request for clarification is denied in its entirety.

*/s/ John J. Tharp Jr.*

| | Courtroom Deputy Initials: | AIR |
|---|---|---|